**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-22531-ALTMAN**

**GLOBAL APPROACH, INC.**,

     *Plaintiff*,

v.

**SCOTTSDALE INSURANCE
COMPANY**,

     *Defendant.*

                          /

## <u>ORDER</u>

On October 20, 2021, our Plaintiff, Global Approach, Inc., filed a claim of loss with its insurer, Scottsdale Insurance Company. The claim concerned water damage from September 3, 2021, which originated in the bathroom of one of Global's rental properties. Before Global filed its claim of loss, it gutted the damaged bathroom and began to repair the rental property. Global subsequently renovated the entire property. After inspecting the rental property, Scottsdale issued partial payment for the claim but limited its payment to the damage in the bathroom. Unhappy with this result, Global filed this lawsuit, alleging that Scottsdale refused to pay the full amount of the claim, including interest.

Scottsdale now moves for summary judgment. It says that Global didn't provide prompt notice of its claim, as required by the parties' insurance policy. After careful review, we **GRANT** Scottsdale's Motion for Summary Judgment (the "MSJ") [ECF No. 25].[1]

---

[1] The MSJ is ripe for review. *See* Response [ECF No. 36]; Reply [ECF No. 42].

## THE FACTS[2]

Scottsdale issued an insurance policy to Global "effective from September 20, 2020, to September 20, 2021 for a property located at 650 Southwest 7th Terrace, Homestead, FL 33034 [hereinafter the "Property"]." Scottsdale's Statement of Material Facts ("Def. SMF") [ECF No. 26] ¶ 1; Global's Response to Def. SMF ("Pl. SMF") [ECF No. 37] ¶ 1 ("Undisputed."); *see also* Insurance Policy between Global and Scottsdale (the "Policy") [ECF No. 26-1]. In the event of loss or damage to the property, the Policy required Global to "[g]ive [Scottsdale] *prompt notice* of the loss or damage." Def. SMF ¶ 4 (emphasis added); *see also* Pl. SMF ¶ 4 ("Undisputed.").

"Global alleges that a 'plumbing loss' damaged its Property on September 3, 2021, and that it was 'probably' aware of the claim on the same day." Joint Statement of Material Facts ("Joint SMF") ¶ 3; *see also* Deposition of Vadim Nestscheret ("Nestscheret Dep.") [ECF No. 26-3] at 45:7–8 (Q: "And when was Global made aware of the claim?" A: "Probably on the same day."). "Global reported the claim to Scottsdale on October 19, 2021" (the "Claim"). *Id.* ¶ 4. In the Claim, Global "stated only that there was water damage to the master bathroom, and no cause was identified." *Id.* ¶ 5. "Prior to reporting the [C]laim, Global hired a handyman to inspect [the Property,] (whose identity Global could not recall)" and "contracted [with] IBC Construction and Florida Services to demolish/perform repairs to the bathroom." *Id.* ¶ 6.

---

[2] "The facts are described in the light most favorable to the non-moving party." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 (11th Cir. 2019); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). "We accept these facts for summary-judgment purposes only and recognize that they may not be the actual facts that could be established through live testimony at trial." *Brown v. Learjet, Inc.*, 2025 WL 3724471, at *3 (S.D. Fla. Dec. 24, 2025) (Altman, J.) (quotations omitted); *see also Cox v. Adm'r, U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)).

After Global gave Scottsdale notice of the Claim, "Scottsdale arranged for an independent adjuster to inspect the property." *Id.* ¶ 7. "Scottsdale's independent field adjuster, Brendon Guinther, inspected the Property on October 27, 2021, with the public adjustor for Global." *Id.* ¶ 8. The parties agree that "Scottsdale was deprived of the opportunity to inspect the Property in the condition in which it was in the immediate aftermath of the loss because of demolition and repair efforts undertaken by Global." Def. SMF ¶ 14; *see also* Pl. SMF ¶ 14 ("Undisputed"). They also agree that "[n]o photographs, videos, or other evidence or images have ever been submitted to Scottsdale of the Property that depict the Property prior to demolition." Joint SMF ¶ 9.

"Scottsdale sent Global and its public adjuster a coverage determination letter on August 8, 2022 noting, in part, that the gutted bathroom prejudiced Scottsdale's investigation, the independent adjuster was unable to determine the cause of loss in order to evaluate coverage, and Scottsdale's attempts to contact the contractor were unsuccessful." Def. SMF ¶ 21; *see also* Pl. SMF ¶ 21 ("Undisputed."). After Mr. Guinther completed his initial inspection, Scottsdale prepared an estimate, noting that the Replacement Cost Value ("RCV") was "$9,000.69" and the Actual Cash Value ("ACV") was "$8,204.40." Pl. SMF, Further Statement of Facts ¶ 2 (citing Christian Tegge Deposition ("Tegg Dep.") [ECF No. 26-2] at 14:13–23). Mr. Guinther also observed that "there was a $5,000.00 applicable deductible." *Ibid.* (citing Tegg Dep. at 14:13–23).

On May 6, 2022, "the public adjuster informed Scottsdale that [the] Plaintiff did not have a cause and origin report for the water damage, but that it was caused by a plumbing malfunction; the public adjuster provided a lump sum estimate from Florida Service, Inc. totaling for $85,000 for work performed to two bathrooms and the kitchen, and for painting." Def. SMF ¶ 18; *see also* Pl. SMF ¶ 18 ("Undisputed."). Scottsdale subsequently conducted a "second inspection," which "took place on July 10, 2023." Def. SMF ¶ 23; *see also* Pl. SMF ¶ 23 ("Undisputed."). The second inspection "noted that the Property had been completely renovated." Def. SMF ¶ 23; *see also* Pl. SMF ¶ 23 ("Undisputed.").

3

Dissatisfied, Global filed this lawsuit, asserting one claim for breach of contract based on Scottsdale's allegedly improper denial of Policy benefits. *See generally* Complaint [ECF No. 1-1].

## THE LAW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis added). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In ruling on a motion for summary judgment, the Court "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also HRCC,*

*Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record" (quoting FED. R. CIV. P. 56 advisory committee's note)). "In any event, on summary judgment, the Court must 'review the facts and all reasonable inferences in the light most favorable to the non-moving party.'" *Brown v. Learjet, Inc.*, 2025 WL 3724471, at *6 (S.D. Fla. Dec. 24, 2025) (Altman, J.) (quoting *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001)).

"In sum, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial." *Brown*, 2025 WL 3724471, at *6 (citing *Amaya v. Vilsack*, 754 F. Supp. 3d 1311, 1318 (S.D. Fla. 2024) (Altman, J.)). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Child. & Fams.*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

## ANALYSIS

Scottsdale contends that Global didn't give it prompt notice—and we agree.

Under the Policy, Global was required to "[g]ive [Scottsdale] prompt notice of the loss or damage." Def. SMF ¶ 4; *see also* Pl. SMF ¶ 4 ("Undisputed."). The Eleventh Circuit has explained that "the purpose of policy provisions requiring prompt notice 'is to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it.'" *PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*, 566 F. App'x 845, 847 (11th Cir. 2014) (quoting *Laster v. U.S. Fid. & Guar. Co.*, 293 So. 2d 83, 86 (Fla. 3d DCA 1974)). "Under Florida law, the insured's failure to provide 'timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy.'" *Clena Invs., Inc. v. XL Specialty Ins. Co.*, 2012

5

WL 1004851, at *3 (S.D. Fla. Mar. 26, 2012) (Scola, J.) (granting summary judgment in favor of the Defendant where there was no dispute about when the defendant received notice (citing *Ideal Mut. Ins. Co. v. Waldrep*, 400 So.2d 782, 785 (Fla. 3d DCA 1981))).

"In applying a prompt-notice provision, we engage in a two-step process." *CCER Invs. LLC v. Scottsdale Ins. Co.*, 2025 WL 1311229, at *10 (S.D. Fla. May 6, 2025) (Altman, J.). "The first step is to determine whether the insured provided timely notice." *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 599 F. App'x 875, 879 (11th Cir. 2015)). "Next, if notice was untimely, prejudice to the insurer is presumed, but that presumption may be rebutted." *Ibid.* Scottsdale prevails at both steps of this process.

## I.      Global Failed to Give "Prompt" Notice

Since the Policy doesn't say when notice is (or ceases to be) "prompt," we'll define "prompt" by looking to Florida law. *Yacht Club*, 599 F. App'x at 879 (construing Florida law where "[t]he limitation period in the policy d[id] not define the contours of 'prompt' notice"). "[T]here is no 'bright-line' rule under Florida law[.]" *Ibid.* (citing *Kings Bay Condo. Ass'n, Inc. v. Citizens Prop. Ins. Corp.*, 102 So. 3d 732 (Fla. 4th DCA 2012)). Instead, "under Florida law, 'prompt,' 'as soon as practicable,' 'immediate,' or comparable phrases have been interpreted to mean that notice should be given with reasonable dispatch and within a reasonable time in view of all of the facts and circumstances of the particular case." *Ibid.* (cleaned up) (collecting cases). In other words, "notice is necessary when there has been an occurrence that should lead a reasonable and prudent man to believe that a claim for damages would arise." *Ibid.* And the relevant time period is from "when the [i]nsureds reasonably should have known a loss had occurred." *SFR Servs., LLC v. Hartford Ins. Co. of the Midwest*, 609 F. Supp. 3d 1287, 1291 (S.D. Fla. 2022) (Ruiz, J.).

### a.   We can resolve the prompt-notice question at summary judgment

"While the question as to what is a reasonable time, depending as it does upon the surrounding circumstances, is ordinarily for decision by the trier of facts[,] . . . . Florida courts have interpreted 'prompt' differently when damage is caused by a known event, such as a hurricane, or when the insured was on-site when readily apparent problems developed." *Yacht Club*, 599 F. App'x at 879–80. "When facts are undisputed and different inferences cannot reasonably be drawn therefrom, the question is for the court." *Id.* at 879; *see also Pierce v. Nat'l Specialty Ins. Co.*, 2025 WL 985350, at *3 (11th Cir. Apr. 2, 2025) ("However, if the undisputed evidence will not support a finding that the insured gave notice to the insurer as soon as practicable, then a finding that notice was timely given is unsupportable." (cleaned up)). Here, the record is undisputed that the damage occurred from a discrete known event, and we know that Global learned of that damage on the day it occurred. In these circumstances, we don't need to wait for a factfinder to help us decide whether Global gave prompt notice.

Scottsdale argues that "[r]eporting damages 46 days after the alleged loss and after demolition and repairs have been made violates the Policy's prompt notice requirement." MSJ ¶ 17. "There is," it adds, "no dispute about these dates and there is no excuse for the delay." *Ibid.* We agree. It's undisputed that "Global reported the [C]laim to Scottsdale on October 19, 2021," Joint SMF ¶ 4, and that the damage occurred on September 3, 2021, *see id.* ¶ 3. It's also undisputed that, "[p]ior to reporting the claim to Scottsdale, Global hired a handyman to inspect [the Property]" and contracted with "IBC Construction and Florida Services to demolish/perform repairs to the bathroom." *Id.* ¶ 6.[3] Attempting to create a dispute of fact, Global insists that "[t]he record is void of any concrete indication as to the date on which the Plaintiff was first placed on notice by the tenant that a loss had occurred." Resp. at

---

[3] Recall that, "[w]hen the [C]laim was reported, it was stated only that there was water damage to the master bathroom, and no cause was identified." Joint SMF ¶ 5. The bathroom, therefore, was the focal point of the Claim.

6. But that's not right. For one thing, the *only* evidence we have about *when* Global received notice is the deposition of Global's Corporate Representative, stating that Global received notice "[p]robably on the same day." Nestscheret Deposition at 45:7–8 (Q: "And when was Global made aware of the claim?" A: "Probably on the same day."). And Global never argues (or offers any evidence for the proposition) that it received notice on a *later* day. *See generally* Resp.; Docket; *see also Collision Care Xpress MCNAB, LLC. v. State Farm Mut. Auto. Ins. Co.*, 2026 WL 1090967, at *2 (S.D. Fla. Apr. 22, 2026) (Altman, J.) ("The moving party has the burden of demonstrating that there are no genuine issues of material fact, but once a summary judgment movant's initial burden is met, the burden shifts to the nonmoving party to bring the court's attention to evidence demonstrating a genuine issue for trial." (quoting *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1335 (11th Cir. 2024) (quotations omitted))).

For another, whether Global received notice on September 3, 2021, or a few days after isn't really the point. As we've explained, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Ibid.* Global never claims (and there is no evidence) that it only ever received notice in October and that it then *promptly* filed the Claim. Recall, too, that "the proper standard for measuring prompt notice is not from the date of the alleged damage but rather from when [Global] *reasonably should have known* a loss had occurred[.]" *SFR*, 609 F. Supp. At 1291 (emphasis added). What matters *here* is that Global noticed the damaged bathroom and then, rather than apprise Scottsdale, *promptly* hired a handyman to investigate the Property *and* demolish the damaged bathroom—all before it saw fit to file the Claim. *See* Joint SMF ¶ 6 ("Prior to reporting the claim to Scottsdale, Global hired a handyman to inspect (whose identity Global could not recall), as well as contracted IBC Construction and Florida Services to demolish/perform repairs to the bathroom."). It's therefore clear that Global knew (or reasonably

8

should have known) about the damage *before* it hired the handyman and started the demolition.[4] That is, after all, *why* Global hired the handyman in the first place. *See ibid.* Because there's no genuine dispute of material fact as to when Global received notice of the damage (or when it gave notice to Scottsdale), we can determine the promptness of Global's notice at summary judgment. *See Yacht Club*, 599 F. App'x at 879 ("[If] facts are undisputed and different inferences cannot reasonably be drawn therefrom, the question is for the court.").

### b. The Claim Wasn't Prompt

No reasonable juror could find that Global "gave notice to the insurer as soon as practicable." *Pierce*, 2025 WL 985350, at *3. We're not suggesting that 46 days is *never* prompt. But our question is whether notice was "given with reasonable dispatch and within a reasonable time in view of *all the facts and circumstances of the particular case.*" *See also PDQ*, 566 Fed. Appx. at 848 (emphasis added). And "the purpose of policy provisions requiring prompt notice is to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it." *Id.* at 847 (cleaned up). Here, it's undisputed that "Scottsdale was deprived of the opportunity to inspect the Property in the condition in which it was in the immediate aftermath of the loss because of demolition and repair efforts undertaken by Global." Def. SMF ¶ 14; *see also* Pl. SMF ¶ 14 ("Undisputed"). And Scottsdale was deprived of the opportunity to inspect the Property because, after Global learned of the water damage, it hired a handyman to inspect the Property and then began demolition and construction on the Property—all before it thought to notify Scottsdale. *See* Def. SMF ¶ 14 ("Scottsdale was deprived of the opportunity to inspect the Property in the condition in which it was in the immediate aftermath of the loss because of demolition and repair efforts undertaken by Global."); *see also* Pl. SMF ¶ 14 ("Undisputed"). Plus, "[n]o photographs, videos,

---

[4] Global never disputes this. *See generally* Resp.; Pl. SMF.

or other evidence or images have ever been submitted to Scottsdale of the Property that depict the Property prior to demolition." Joint SMF ¶ 9. And, when Scottsdale subsequently conducted a "second inspection[,] . . . the Property had been **completely** renovated." Def. SMF ¶ 23 (emphasis added); *see also* Pl. SMF ¶ 23 ("Undisputed."). In other words, because Global failed to "promptly" notify Scottsdale of the Claim, Scottsdale was unable to "evaluate its rights and liabilities" or determine whether the alleged damage was a "fraud or imposition upon it." *PDQ*, 566 F. App'x at 847.

As the Eleventh Circuit has noted, "Florida courts have interpreted 'prompt' differently when damage is caused by a known event, such as a hurricane, or when the insured was on-site when readily apparent problems developed." *Yacht*, 599 F. App'x at 879–80. In circumstances like ours, where there's no dispute that the insured *knew* about the damage and then, without explanation, waited weeks to notify the insurer, Florida courts routinely conclude that notice *wasn't* prompt. *See also Deese v. Hartford Acc. & Indem. Co.*, 205 So. 2d 328, 329 (Fla. 1st DCA 1967) (affirming summary judgment because of lack of prompt notice where the plaintiff "learned of this event within two or three days after it occurred, but failed to notify [the defendant] until after suit was filed against him approximately four weeks thereafter"); *Ideal*, 400 So. 2d at 785–86 ("In the present case, the record reveals no reasonable interpretation of the evidence which will support a finding that the notice of loss was given as soon as practicable. . . . No fact in this case justified a delay from late November, when Waldrep discovered the aircraft on the ground and U.S. Customs and Bahamian authorities reported the pilot dead in the cockpit, until the following January 15, when notice was given. Even if the reasonable reporting date is extended until early December, when Waldrep knew that the downed aircraft was on a remote island with the pilot murdered, with a wing damaged by gunfire and with the interior damaged by the saturation of human body fluids, the delay to mid-January cannot be justified."); *LMP Holdings, Inc. v. Scottsdale Ins. Co.*, 2021 WL 4900622, at *3 (S.D. Fla. Sept. 27, 2021) (Martinez, J.) (granting summary judgment for the defendants because "[t]he undisputed record shows that [the p]laintiff became aware

of punctured holes on the roof and other water damage the day after the hurricane struck, and instead of reporting it, decided to patch it up"); *1500 Coral Towers Condos. Ass'n, Inc. v. Citizens Prop. Inc. Corp.*, 112 So. 3d 541 (Fla. 3d DCA 2013) (affirming summary judgment for the defendant where the plaintiff admitted that it had some knowledge of damage to the complex within a month after Hurricane Wilma, made repairs to the roof, and then waited to notify the insurance company). Because Global waited six weeks to report the Claim to its insurer—and since, during that delay, hired an independent handyman, demolished the damaged bathroom, and renovated the Property, all while failing to preserve any evidence of the damaged bathroom—we find that the Claim wasn't prompt as a matter of law.

## II.   Scottsdale was prejudiced by the untimely notice

We turn, then, to the second question—whether Global has rebutted the "presumption of prejudice to the insurer." *PDQ*, 566 F. App'x at 849. "The burden is 'on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts.'" *Ibid.* (quoting *Bankers Ins. Co. v. Macias*, 475 So.2d 1216, 1217–18 (Fla. 1985)). "The insured may satisfy this burden by showing, for example, that 'an investigation conducted immediately following the occurrence would not have disclosed anything materially different from that disclosed by the delayed investigation.'" *Clena*, 2012 WL 1004851, at *4 (quoting *Niesz v. Albright*, 217 So.2d 606, 608 (Fla. 4th DCA 1969) (cleaned up)). Global advances two arguments to rebut the presumption of prejudice—both unpersuasive.

### a.  We can resolve the issue of prejudice at summary judgment

*First*, it argues that "there is clearly a question of fact as to whether the Defendant was in fact substantially prejudiced." Resp. at 9. In Global's view, therefore, "[s]ubstantial prejudice is a jury question." *Ibid.* We disagree. The Eleventh Circuit has held that "[p]rejudice is properly resolved on summary judgment where an insured fails to present evidence sufficient to rebut the presumption."

11

*PDQ*, 566 F. App'x at 849. And that's precisely what we have here. Indeed, not only has Global failed to rebut the prejudice presumption with any evidence, but the record unambiguously *supports* Scottsdale's prejudice contentions.

For starters, it's undisputed that "Scottsdale was deprived of the opportunity to inspect the Property in the condition in which it was in the immediate aftermath of the loss because of demolition and repair efforts undertaken by Global." Def. SMF ¶ 14; *see also* Pl. SMF ¶ 14 ("Undisputed"). Global argues that, despite this critical concession, Scottsdale wasn't prejudiced because "the Defendant's expert has in fact determined the cause and origin of the claimed damages[.]" Resp. at 12. Specifically, Global says that Scottsdale's "retained causation expert, Mr. Stephen G. Sheffield, P.E., purports to attest that (a) the source of water that resulted in water damage to the master bathroom floor structure was consistent with water that escaped from the toilet or the toilet water supply pipe," and "(b) that the water damage was due to long-term repeated exposures to water, and not from a one-time water leak." *Id.* at 9.[5] For two reasons, we think Global misses the mark.

*One*, the Eleventh Circuit has already rejected Global's argument that, because Scottsdale could determine one of two causes for the damage, it wasn't prejudiced:

> The only information The Yacht Club proffers to rebut the presumption of prejudice is . . . as to causation[.] This is not enough, however, to create a genuine issue of material fact. Florida law recognizes that an "insurer is prejudiced by untimely notice when the underlying purpose of the notice requirement is frustrated by late notice." The ability to offer testimony as to causation alone does not satisfy the purpose of prompt notice and therefore cannot vitiate the

---

[5] Notably, *neither* the public adjustor *nor* the independent adjustor could determine the "cause and origin" of the water damage. *See* Def. SMF ¶ 8 (stating that "the public adjuster informed Scottsdale that [the] Plaintiff did not have a cause and origin report for the water damage"); Pl. SMF ¶ 8 ("Undisputed"); Def. SMF ¶ 21 ("Scottsdale sent Global and its public adjuster a coverage determination letter on August 8, 2022 noting, in part, that the gutted bathroom prejudiced Scottsdale's investigation, the independent adjuster was unable to determine the cause of loss in order to evaluate coverage, and Scottsdale's attempts to contact the contractor were unsuccessful."); Pl. SMF ¶ 21 ("Undisputed.").

> prejudice suffered by Lexington due to delayed investigation and mitigation.

*Yacht*, 599 F. App'x at 881 (quoting *1500 Coral Towers*, 112 So. 3d at 544). Scottsdale's ability to put on expert testimony about causation thus isn't enough, standing alone, to satisfy Global's burden here.

*Two*, the Eleventh Circuit has made clear that, where the insured "undertook certain repairs before filing a claim," the insurer is "prejudiced by not being able to investigate prior to those repairs and by not participating in the repair of those damages." *Ibid.*; *see also PDQ*, 566 F. App'x at 850 (finding a failure to rebut the presumption of prejudice where the plaintiff failed to "proffer anything to indicate that the condition of the Property was in the same condition as it was right after the storm"). Here, "[t]here is no evidence showing that an earlier inspection would not have impacted the investigation." *PDQ*, 566 F. App'x at 849. "For instance, [Global] offers nothing to address (a) whether better conclusions could have been drawn without the delay, (b) whether those conclusions could have been drawn more easily, or (c) whether the repairs to the affected areas that took place in the interim would complicate an evaluation of the extent of the damage or [Global's] efforts to mitigate its damages." *Id.* at 849–50; *see also Yacht*, 599 F. App'x at 821 ("Moreover, The Yacht Club undertook certain repairs before filing a claim with Lexington. Lexington was prejudiced by not being able to investigate prior to those repairs and by not participating in the repair of those damages."). In sum, "an insured must show a dispute of fact as to whether the insurer could have reached *better* conclusions (or even the same conclusions *more easily*) if it had received timely notice." *CCER*, 2025 WL 1311229, at *4. But Global offers no evidence on this critical question. "And it's well-settled that the absence of evidence is not enough to survive a motion for summary judgment." *Fagan v. U.S. Att'y Gen.*, 2025 WL 3170821, at *13 (S.D. Fla. Nov. 13, 2025) (Altman, J.).

### b.   The prompt-notice requirement isn't vitiated by a denial on other grounds

In its *second* argument, Global says that "Florida courts have uniformly held that where an insurer has an opportunity to investigate a claim and deny it on grounds other than late notice, that

'effectively rebuts any presumption of prejudice arising from the late notice' and an insurer waives its right to object to coverage on the basis that the insured failed to provide timely notice of the claim." Resp. at 9. Unfortunately for Global, we recently rejected this same argument in *CCER*. As we explained there:

> Even if an insurer believes it has other grounds for denying coverage it is entitled to timely notice so it can have an opportunity to make an early evaluation of its risks and to decide how to proceed. When notice isn't prompt, the insurer becomes *entitled* to a presumption of prejudice, which the insured must then rebut. And the prompt-notice presumption of prejudice isn't facially rebutted simply because the insurer is able to reach a coverage conclusion; rather, an insured must show a dispute of fact as to whether the insurer could have reached *better* conclusions (or even the same conclusions *more easily*) if it had received timely notice.

> To hold, then, that an insurer waives its prompt-notice defense when it denies the claim for any other reason is effectively to hold that an insurer can *never* claim late notice as a defense—*i.e.*, that it can *never* obtain the presumption to which it's, by law, entitled—unless late notice is the *sole* basis for denying coverage. Florida law does not support such a theory. And the overwhelming balance of cases considering a prompt-notice defense have said so.[6]

---

[6] *See also Gemini II*, 592 F. App'x at 808 (rejecting argument that "an insurer cannot be prejudiced by late notice if it would have denied the claim even if notice had been timely"); *Yacht Club*, 599 F. App'x at 879 ("[Plaintiff] argues that an insurer cannot be prejudiced by late notice if it would have denied the claim even had notice been timely. . . . [W]e recently rejected this very argument in *Gemini II Ltd.*"); *Bonsignore v. QBE Specialty Ins. Co.*, 2024 WL 3103763, at *4 (S.D. Fla. May 21, 2024) (Huck, J.) ("Plaintiff asserts that because Defendant initially denied coverage based on a different policy exclusion, Defendant is barred from raising untimely notice as a defense. . . . The Court rejects Plaintiff's position and finds that Defendant has not waived its untimely notice defense." (citing *Gemini II*, 592 F. App'x at 808)); *Ro-Ma Holdings #4, LLC v. Scottsdale Ins. Co.*, 2021 WL 9748521, at *4 (S.D. Fla. Apr. 19, 2021) (Martinez, J.) ("Plaintiff argues that Defendant waived the late notice defense when it denied coverage on the merits. This argument fares no better. Contrary to Plaintiff's contentions, Defendant is not barred from raising the late notice defense merely because it denied coverage based on grounds other than late notice."); *Wheeler's Moving & Storage, Inc. v. Markel Ins. Co.*, 2012 WL 3848569, at *8 (S.D. Fla. Sept. 5, 2012) (Marra, J.) ("The Court rejects [the insured]'s argument that because [the insurer] cited the auto exclusion, in addition to late notice, as a reason for denying coverage, [the insurer] waived the defense of late notice."); *cf. 1130 W. Atl. Ave. LLC v. Scottsdale Ins. Co.*, 2021 WL 7502570, at *4 (S.D. Fla. Oct. 6, 2021) (Cannon, J.) ("Plaintiff's argument is that Scottsdale has not been prejudiced because it was still able to deny coverage on grounds other than notice. The Court

*CCER*, 2025 WL 1311229, at \*4–5 (cleaned up).

"[R]aising the prompt-notice defense allows the insurer to litigate the issue of prejudice—and *whether* the insurer was prejudiced requires an inquiry that's largely divorced from the reasons the insurer gave for denying coverage." *Id.*, at \*5. As we observed in *CCER*, then, Global's position would "create its own 'absurd result' because insurers would be encouraged to avoid investigating late-noticed claims for fear of waiving the presumption of prejudice that reasonably attaches when the insured breaches the policy." *Ibid.*

Global thus hasn't produced any evidence to rebut the presumption of prejudice here.

\*     \*     \*

Accordingly, we hereby **ORDER** and **ADJUDGE** that the Defendant's Motion for Summary Judgment [ECF No. 25] is **GRANTED**. We'll enter final judgment in accordance with Rule 58 separately.

**DONE AND ORDERED** in the Southern District of Florida on June 1, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

disagrees[.] . . . First, the Eleventh Circuit has repeatedly rejected this argument. . . . Third, [as here], Scottsdale's coverage determination letter did not abandon Plaintiff's untimely notice as a potential ground for disclaiming coverage.").