**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-22531-ALTMAN/Hernandez**

**GLOBAL APPROACH, INC.**,

*Plaintiff*,

*v.*

**SCOTTSDALE INSURANCE COMPANY**,

*Defendant*.
_______________________________________/

# REPORT AND RECOMMENDATION

Before us is Defendant Scottsdale Insurance Company's ("Defendant") Verified Motion for Determination of Entitlement to and Award of Reasonable Attorneys' Fees and Costs ("Motion"). [ECF No. 54]. Plaintiff Global Approach, Inc. ("Plaintiff") disputes the amount claimed, but not Defendant's entitlement to fees. [ECF No. 57]. Defendant did not file a reply, and the matter is ripe for review. Having reviewed the Motion, supporting documents, and being advised in the premises, we respectfully recommend that Defendant's Motion be **GRANTED in part and DENIED in part**.

## BACKGROUND

On October 20, 2021, Plaintiff filed a claim of loss with Defendant, Plaintiff's insurer, in connection with water damage that originated in the bathroom of one of Plaintiff's rental properties. Before filing the claim, Plaintiff renovated the rental property, which included substantial work on the bathroom. Sometime later, after inspecting the property, Defendant paid part of the claim but limited coverage to the damage in the bathroom. Plaintiff sued in state court for the full amount of the claim, including interest, and Defendant removed the matter to federal court. [ECF No. 1].

The matter was scheduled for mediation. [ECF No. 14]. Two weeks before the scheduled mediation, that is, December 18, 2024, Defendant sent Plaintiff a proposal for settlement, [ECF No.

15], which Plaintiff rejected, [ECF No. 57 at 3]. After mediation proved unsuccessful, [ECF Nos. 17, 18], Defendant moved for summary judgment, arguing that Plaintiff failed to give the contractually required notice of loss, [ECF No. 25]. The Court agreed and granted summary judgment in Defendant's favor. [ECF No. 48 at 5–6, 15].

Defendant now moves for attorneys' fees and costs incurred after the December 18, 2024 proposal for settlement. Defendant seeks $35,684 in attorneys' fees and $9,855.10 in expert and mediation costs. [ECF No. 54 at 8, 10]. To support these figures, Defendant submitted: (1) a copy of the proposal for settlement; (2) twelve pages of attorney timekeeping entries ("Time Report"); and (3) a record of expert and mediation costs ("Cost Record"). [ECF Nos. 51-1–51-3]. Plaintiff concedes that Defendant is entitled to fees and costs, but contests the above figures, claiming Defendant has not supported its attorneys' hourly rates and time expenditures. Pointing to what it considers duplicative and unsupported entries in the Time Report, Plaintiff asks that the Court cut the fees by some unspecified percentage. Plaintiff also disputes Defendant's asserted expert and mediation fees. Save for a few instances of improper block billing, for which the Court may compensate with a modest five-percent fee-reduction, Defendant adequately supports its requested attorneys' fees. Defendant has not supported its claim for expert and mediation fees, however, and so we respectfully recommend that they be denied. The total recommended award is $33,899.80.

## Legal Framework

To calculate attorneys' fee awards, courts generally use the "lodestar" method. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "The first step in the computation of the lodestar is determining the reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* (quoting *Norman*, 836 F.2d at 1299). "The general rule is that the relevant market

for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *Am. C.L. Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quotation marks omitted). "The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which requires "more than the affidavit of the attorney performing the work." *Loranger*, 10 F.3d at 781 (quotation marks omitted). That said, the Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.*

In assessing the reasonableness of hourly rates, courts consider the following twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (citing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

"The next step in the computation of the lodestar is the ascertainment of reasonable hours." *Norman*, 836 F.2d at 1301. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. "In other words, the Supreme Court requires fee applicants to exercise 'billing judgment.'" *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 437). The "hours excluded are those that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Id.* (emphasis omitted).

The Court "is charged with deducting for redundant hours," which "generally occur where more than one attorney represents a client" and charges for "doing the same work." *Id.* at 1301–02. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger*, 10 F.3d at 783); *see also Hensley*, 461 U.S. at 436–37 ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

The Court follows a two-step analysis. First, it multiplies the reasonable hourly rate by the number of hours reasonably worked—the lodestar. *See Bivins*, 548 F.3d at 1350. Second, it may "adjust the fee upward or downward, including [by considering] the important factor of the results obtained." *Hensley*, 461 U.S. at 434 (quotation marks omitted). "If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman*, 836 F.2d at 1302.

Finally, "[t]he determination of fees 'should not result in a second major litigation.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* Whatever the court decides, it must "provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437.

## ANALYSIS

Defendant seeks $35,684 in attorneys' fees and $9,855.10 in expert and mediation expenses. Although Plaintiff concedes that Defendant is entitled to attorneys' fees, it objects that Defendant's hourly rate and hours-expended figures are unreasonable and inadequately supported. Plaintiff also objects to Defendant's request for expert and mediation costs. As a result, the present analysis

focuses on the reasonableness of Defendant's fee requests given its proffered evidence. We conclude that the legal fees are reasonable, but the unsupported expert and mediation costs are not.

For the sake of completeness, the Court briefly discusses Defendant's unobjected-to entitlement to attorneys' fees. Section 768.79 of the Florida Statutes entitles a defendant to recover reasonable costs and attorneys' fees after it extends a proposal for settlement if (1) the plaintiff fails to accept the proposal within 30 days; and (2) the defendant obtained a judgment of no liability. FLA. STAT. § 768.79(1). A proposal for settlement must be in writing, name the parties involved, and detail the different components of the settlement offer as well as the total settlement amount. *Id.* § 768.79(2). If the defendant meets these statutory criteria, the attorneys' fee award is mandatory unless the proposal for settlement was not made in good faith. *Id.* § 768.79(7)(a); *Anderson v. Hilton Hotels Corp.*, 202 So. 3d 846, 856 (Fla. 2016).

Here, neither party disputes that Defendant met the statutory requirements, and Plaintiff never suggests that the December 2024 offer was not made in good faith. Rather, the battle focuses on the calculations underpinning the asserted fees. Plaintiff objects that Defendant's fees reflect inflated hours and inadequately supported hourly rates. [ECF No. 57 at 3–7].[1] Regarding expert and mediation costs, Plaintiff's vague challenge centers on its demand for "strict proof that each mediation and expert expense qualifies as a taxable cost." *Id.* at 7. Plaintiff fails to explain what "strict proof" means, nor does it examine Defendant's proffered evidence on this issue. Still, it is Defendant that shoulders the burden of establishing reasonableness. And while Defendant's evidence on legal fees is, for the most part, sufficient, its expert-fee evidence is lacking, and we treat those costs accordingly.

A. Hourly Rate

Plaintiff seeks $35,684 in fees for the work of two lawyers and one paralegal. These timekeepers, and their respective rates, are:

---

[1] Defendant mistakenly identifies the Middle District of Florida as the relevant market. [ECF No. 54 at 7].

| Timekeeper | Requested Hourly Rate |
|---|---|
| Julia Young (lawyer) | $290/$300 |
| Sara McLaughlin (lawyer) | $250/$260 |
| Heather Sadusky (paralegal) | $120 |

[ECF No. 54 ¶ 22].

The trial team secured a favorable result for Defendant, which is one of the factors the Court considers when assessing hourly-rate reasonableness. *Hensley*, 461 U.S. at 430 n.3. And, although the record does not disclose the specific amount in controversy, before filing suit, Plaintiff estimated $160,278 in damages, [ECF No. 1 ¶ 5; ECF No. 1-2]. Next, we consider the trial team's experience and credentials. Ms. Young, a partner at Wilson Elser, has over twenty years of legal experience and is a member of both the Florida and South Carolina Bar. [ECF No. 54 ¶ 25]. For nearly a decade, she has specialized in "first party property breach of contract and bad faith claims," which is a specialization highly relevant to the underlying litigation. *Id.* Ms. McLaughlin, who was admitted to practice in 2020, is an associate at the same firm. *Id.* ¶ 24. She also specializes in first-party property coverage. *Id.* Ms. Sadusky, in turn, has over twenty-eight years of experience as a paralegal. *Id.* ¶ 23. Plaintiff does not challenge the defense team's qualifications and acknowledges that the hourly rates "may ultimately prove reasonable." [ECF No. 57 at 7]. Nevertheless, Plaintiff complains that Defendant has not shown these rates fit the South Florida legal market. *Id.*

Defendant's evidence on the South Florida market is admittedly thin. It submits no evidence—such as affidavits or market surveys, for example—to support its claims about the going rates for legal services in South Florida. *Cf. Pliteq, Inc. v. Mostafa*, No. 23-CV-24868, 2026 WL 872506, at *6 (S.D. Fla. Mar. 31, 2026) (summarizing comprehensive evidence submitted to support hourly rates for lawyers with varying levels of experience). Even so, the Court "is itself an expert on the question [of hourly rates] and may consider its own knowledge and experience concerning reasonable

and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger*, 10 F.3d at 781.

The Court finds the trial team's hourly rates reasonable. First, the attorneys' rates ($290 to $300 for a partner with 23 years of experience, and $250 to $260 for an associate with six years' experience) sit at the low end of the approved range in this District. *See Atain Specialty Ins. Co. v. Henry's Carpet & Interiors, Inc.*, No. 20-CV-62089, 2021 WL 4976228, at *3 (S.D. Fla. July 12, 2021), *report and recommendation adopted*, 564 F. Supp. 3d 1265 (S.D. Fla. 2021) (in insurance coverage case, approving hourly rate of $375 for attorney with 12 years of experience and $275 for attorney with two years' experience); *Southern-Owners Ins. Co. v. Marquez*, No. 20-CV-81431, 2022 WL 2651661, at *13 (S.D. Fla. July 8, 2022) (in insurance coverage dispute, approving as reasonable hourly rate of $395 for attorney with over 10 years' experience and $415 for attorney with nearly 20 years of experience); *B/E Aerospace, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 16-CV-81293, 2017 WL 9288915, at * (S.D. Fla. Aug. 29, 2017) (finding a $472.50 hourly fee "somewhat higher than average" but reasonable for a partner in an insurance coverage action).

Second, Ms. Sadusky's rate of $120 is likewise in step with the market, especially considering her twenty-eight years of experience. [ECF No. 54 ¶ 23]. Indeed, this rate is well within the $100 to $150 range courts in this District have found appropriate for paralegals. *See, e.g.*, *Minden Pictures, Inc. v. SEPI Mktg. Corp.*, No. 22-CV-62135, 2023 WL 7490765, at *3 (S.D. Fla. Aug. 23, 2023) (noting "in this District hourly rates of $125.00 are typically found reasonable when assessing time billed by paralegals" and finding $125 hourly rates reasonable for paralegal with 28 years of experience); *Gulf Bldg. LLC v. Philadelphia Indem. Ins. Co.*, No. 22-CV-06573, 2024 WL 309026, at *5–7 (S.D. Fla. Jan. 8, 2024) (finding $125 hourly rate reasonable for paralegals with 10, 13, and 23 years of experience), *report and recommendation*, No. 22-CV-60573, 2024 WL 307623 (S.D. Fla. Jan. 26, 2024); *Centennial Bank v. M/V "Why Not"*, No. 22-CV-22883, 2024 WL 3072041, at *6 (S.D. Fla. Mar. 6, 2024) (finding $100

and $125 hourly rates to be "more in-line with paralegal hourly rates approved by Courts in this District"), *report and recommendation adopted*, No. 22-CV-22883, 2024 WL 3070755 (S.D. Fla. June 20, 2024); *Venus Concept USA, Inc. v. Wilson*, No. 21-CV-21656, 2024 WL 1077347, at *5 (S.D. Fla. Feb. 22, 2024) (finding $150 hourly rate for paralegal with 17 years of experience to be reasonable and "consistent with hourly rates typically awarded to paralegals in this District"); *Massive Transit Transp., LLC v. Atl. Coast Auto., Inc.*, No. 23-CV-61321, 2024 WL 693061, at *5 (S.D. Fla. Jan. 31, 2024) (same, for paralegal with 25 years of experience), *report and recommendation adopted*, No. 23-CV-61321, 2024 WL 691425 (S.D. Fla. Feb. 20, 2024).

B. Hours Billed

Defendant's asserted fees are based on 149.2 total hours. Ms. McLaughlin leads the group with 123.1 hours billed, followed by Ms. Sadusky and Ms. Young with 15.7 and 10.4 hours, respectively. [ECF No. 54 at 8]. To support the billings, Defendant submitted the Time Report, which compiles the timekeepers' entries. [ECF No. 54-2]. Plaintiff argues the hourly total is unreasonable for three reasons: (1) the billing records show duplication of effort; (2) block billing precludes adequate review; (3) some of the entries concern unrecoverable administrative tasks. [ECF No. 57 at 3–6]. We agree that the records reflect block billing, but the offense is not egregious, and so a five-percent reduction is sufficient on that score. Defendant's remaining arguments fail, as explained below.

Turning first to Plaintiff's duplication-of-effort argument, Plaintiff faults defense counsel for repeatedly reviewing pleadings, discovery responses, expert reports, photographs, and other case materials. [ECF No. 57 at 3–4]. Plaintiff never identifies the allegedly duplicative entries, leaving the Court to fill in the particulars of its argument. Conversely, because Defendant declined to file a

reply and submitted no affidavits[2] to explain the entries, the Court must review the Time Report with only the docket for context.

The Time Report is twelve pages long with about 17 entries per page. Entry descriptions range between one and two lines. The entries identify the recordkeeper, the work performed, the time spent on a given task (in six-minute increments), and the applicable hourly rate. *See generally* [ECF No. 54-2]. Consistent with the basis for fees, the entries are dated from December 18, 2024 (when the proposal was submitted) to June 1, 2026 (when the Court granted summary judgment). *Id.* at 1, 12.

Plaintiff fails to identify which entries are, in its estimation, duplicative. And while the Court notes that some entries concern similar materials, nothing in the record suggests wasted or needless effort. For example, the December 18, 2024 entry for Ms. Young discusses reviewing discovery "in connection with settlement valuation." [ECF No. 54-2 at 1]. Several of Ms. McLaughlin's entries also involve her review of discovery while drafting the mediation report. *Id.* at 1–3. Though the entries certainly describe a similar review, the reason for the review differs—assessing potential settlement figures versus preparing a mediation report. *Id.* Around this time, Ms. Sadusky was also reviewing discovery materials while preparing deposition exhibits. *Id.* at 1. These entries, which describe the recordkeeper's work in reasonable detail, do not show "substantial duplication of effort," as Plaintiff maintains, but reflect the fact that lawyers often consult the same materials to execute different case-related functions. For similar reasons, Plaintiff's contention that the records show "substantially identical document review" fails. [ECF No. 57 at 4]. The entries above do reflect "overlapping" review, but with different aims. Plaintiff also fails to identify any entries reflecting "excessive duplication." *Id.* at 5. To the extent that Plaintiff objects to the total hours expended,

[2] The Motion is submitted with a declaration from counsel affirming the reasonableness of the fees, [ECF No. 54 ¶ 31], but lacks any description of the work performed, which the Motion leaves to the Time Report.

the challenge fails as conclusory. *See Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997) (affirming attorneys' fees award where opposing party "lodged only conclusory objections to the [number of] hours submitted"); *Buczek v. Trans Union LLC*, No. 05-CV-80834, 2007 WL 9706922, at *3 n.3 (S.D. Fla. Feb. 20, 2007) ("[W]ith respect to hours claimed to be excessive or unnecessary, fee opponents have the obligation to offer specific and reasonably precise objections to the fee application . . . . A fee opponent's failure to satisfy this obligation is potentially fatal." (citing *Barnes*, 168 F.3d at 428; *Gray*, 125 F.3d at 1389)). And, in any event, "the measure of reasonable hours is . . . not the least time in which [work] might theoretically have been done." *Norman*, 836 F.2d at 1306.

Plaintiff also complains that some (unspecified) entries pertain to administrative tasks, such as "compiling notebooks," "preparing correspondence," "transmitting exhibits," and "coordinating witnesses." [ECF No. 57 at 6]. The Time Report has a single reference to a notebook, which was prepared based on the timekeeper's "[a]nalysis of claim materials." [ECF No. 54-2 at 2]. The analysis and notebook, the entry informs, was created to help with a specific witness's deposition. *Id.* As a result, the entry does not center on the administrative task of compiling a notebook; rather, it describes analysis that led to the creation of specific work product. This work product, in turn, was meant to help with a key part of the litigation.

Plaintiff's block-billing objection, though underdeveloped, has teeth. Plaintiff gives "examples" of billing descriptions—again without identifying specific entries—that fail to separate tasks such as document review, legal analysis, strategy, and drafting. [ECF No. 57 at 5]. Plaintiff seeks "across-the-board percentage reductions" for block billing but never specifies was that percentage should be. *Id.* at 6. Because the entries show some instances of block billing, a five-percent reduction is appropriate.

"'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012). The Eleventh Circuit has noted that block billing is a problem because vague billing records "make[ ] it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task in th[e] litigation." *See Barnes*, 168 F.3d at 429. Many courts have applied across-the-board reductions "to offset the effects of block billing." *Ceres Env't Servs.*, 476 F. App'x at 203 (citing *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1377–78 (M.D. Fla. 2010); *Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-CV-20079, 2008 WL 2688117, at *13 (S.D. Fla. July 1, 2008)).

In fact, courts in this Circuit routinely reduce the fee award to avoid penalizing the opponent for timekeeping that lumps *unrelated* tasks into a single entry. *See Ceres Env't Servs.*, 476 F. App'x at 203–04 (affirming a ten-percent reduction in counsel's hours to address the block billing issue when the district court recognized that, although some entries were informative, other entries routinely included multiple separate tasks or otherwise vague language, making it difficult for the court to ascertain the number of hours devoted to each task in the litigation); *Molina v. Kijakazi*, No. 22-CV-21480, 2024 WL 4501033, at *3 (S.D. Fla. Oct. 16, 2024) (reducing fee award by modest five percent, where the block billing concerned tasks that possessed "an inherent connection" such as legal research, reviewing transcripts, and drafting a motion); *Hiscox Dedicated Corp. Member, Ltd. v. Matrix Grp. Ltd., Inc.*, No. 09-CV-02465, 2012 WL 2226441, at *4–5 (M.D. Fla. June 15, 2012) (cutting fees by twenty percent, where "not a single page exists without a block billed entry among the hundreds of pages of timesheets"); *Lil' Joe Wein Music, Inc.*, 2008 WL 2688117, at *12–13 (reducing the amount of recoverable attorneys' fees by twenty percent when attorneys repeatedly grouped eight or more unrelated tasks into single entry).

The Court agrees that the Time Report contains instances of block billing. The infraction, however, is mild. And the entries constitute a small fraction of the time spent on the case. Along these lines, the Court identified the following:

- On January 6, 2025, Ms. McLaughlin billed 0.8 hours for: "Review[ing] and analyz[ing] Plaintiff's discover[y] responses, report of [witness], and deposition transcript of Plaintiff's corporate representative for use in composition of mediation report to John Salmon in this matter and supplemental discovery requests." [ECF No. 54-2 at 3].

- On January 10, 2025, Ms. Sadusky billed 0.3 hours for conducting: "Analysis of July 22, 2024 Trial Order, docket report, claim file material including reports and correspondence, counsel's LDR report, discovery responses and nonparty subpoenas for use in assessing posture of case and tasks to be performed, as well as for composition of file summary which includes analysis of tasks to be completed, outline of deadlines to meet, summary of experts, mediation deadline, outstanding discovery requests, proposal for settlements, and outstanding responses from nonparty subpoenas[.]" *Id.*

- On February 19, 2025, Ms. Young billed 0.9 hours for: "Review[ing] and consider[ing] evidence obtained in case to-date," and developing a "summary judgment disposition strategy" and "identify[ing] established facts supportive of striking Plaintiff's causation [ ] expert" and "summary judgment" generally. *Id.* at 6.

- On February 25, 2025, Ms. Young billed 1.10 hours for implementing: "Further and final revisions to: (i) Statement of Facts in Support of Motion for Summary Judgment, (ii) Declaration of Chris Logan to be used in support of summary judgment motion, (iii) Declaration of Stephen Sheffield to be used in support of summary judgment motion, and (iv) Motion for Full and Final Summary Judgment, or, Alternatively, Partial Summary Judgment." *Id.* at 8.

These instances of block billing do not preclude meaningful review of the Time Report or the broader request for fees. The time expenditures are not disproportionate to the activities described, and the tasks share a clear relationship (e.g., drafting the facts underpinning a motion and drafting the motion itself). This case, therefore, sits far closer to the *Molina v. Kijakazi* side of the block billing spectrum—combining tasks, but not egregiously so. In *Molina*, the court held that the entry: "[d]rafting of Plaintiff's Motion for Summary Judgment and Memorandum of Law, including review and notes of 1,767-page transcript, as well as research performed" "certainly qualif[ied]" as block

billing, because it "does not identify the time spent reviewing the transcript, the time spent researching, or the time spent drafting the motion." *Molina*, 2024 WL 4501033, at *1. Still, given the inherent relationship between the tasks described, the court concluded that a twenty-percent cut was excessive, especially when compared to more egregious cases involving similar reductions. *Id.* at *2 (collecting cases). A five-percent reduction, however, was enough "to offset the harm of block billing" stemming from the five problematic entries. *Id.* at *3. The same is true here, and a five- percent reduction will suffice. This brings the attorneys' fee figure down to $33,899.80.

C. Expert and Mediation Costs

The District Court previously awarded Defendant $1,156.70 in taxable costs under 28 U.S.C. § 1920. [ECF No. 56]. Defendant now seeks $9,855.10 in non-taxable costs incurred after the proposal for settlement was served. [ECF No. 54 at 10].

"Federal courts can only tax costs outside of 28 U.S.C. § 1920 where a statute 'explicitly' authorizes it to do so, or a court explicitly declares that the statute creates a substantive right to costs." *Guzy v. QBE Specialty Ins. Co.*, No. 20-CV-23169, 2023 WL 2244829, at *8 (S.D. Fla. Feb. 9, 2023), *report and recommendation adopted*, No. 20-CV-23169, 2023 WL 2240456 (S.D. Fla. Feb. 27, 2023) (quoting *Kearney v. Auto-Owners Ins. Co.*, No. 06-CV-00595, 2010 WL 3062420, at *2 (M.D. Fla. Aug. 4, 2010)). Non-taxable costs such as expert and mediation fees are not explicitly authorized under Section 768.79 of the Florida Statutes. *Moody v. Integon Nat'l Ins. Co.*, 18-CV-23094, 2019 WL 4731983, at *5 (S.D. Fla. July 30, 2019) (collecting cases). And so, numerous courts in this Circuit have denied requests for expert and mediation fees, limiting recovery under Section 768.79 to what is "award[able] under § 1920." *Kearney*, 2010 WL 3062420, at *2; *Murphy v. Airway Air Charter, Inc*, No. 23-CV-23654, 2024 WL 4635533, at *4–5 (S.D. Fla. Oct. 2, 2024) (denying expert witness and mediation fees requested under § 768.79), *report and recommendation adopted*, No. 23-CV-23654, 2025 WL 303689 (S.D. Fla. Jan. 27, 2025); *Tamiami Condo. Warehouse Plaza Ass'n v. Markel Am. Ins. Co.*, No. 19-CV-21289,

2020 WL 6585873, at *7 (S.D. Fla. Sep. 11, 2020) (same, citing *Moody*, 2019 WL 4731983, at *5), *report and recommendation adopted*, No. 19-CV-21289, 2020 WL 6581641 (S.D. Fla. Nov. 10, 2020); *M&M Sisters, LLC v. Scottsdale Ins. Co.*, No. 21-CV-24081, 2022 WL 18717403, at *22 (S.D. Fla. Dec. 19, 2022) (same), *report and recommendation adopted*, No. 21-CV-24081, 2023 WL 2017104 (S.D. Fla. Feb. 15, 2023); *Illoominate Media, Inc. v. CAIR Fla., Inc.*, No. 19-CV-81179, 2021 WL 4030008, at *7 (S.D. Fla. Aug. 4, 2021) ("As a preliminary matter, costs not enumerated under 28 U.S.C. § 1920, such as travel expenses and expert fees, are not allowed, even under Section 768.79."), *aff'd*, No. 19-CV-81179, 2022 WL 708754 (S.D. Fla. Feb. 3, 2022), *aff'd*, No. 22-10718, 2022 WL 4589357 (11th Cir. 2022). Accordingly, Defendant's request for expert and mediation fees should be denied.

The request also fails as a matter of proof. Defendant provided a Cost Report consisting of two (mostly redacted) pages. The relevant entries read:

- December 30, 2024 ($7,740.10) – "Expert Fees & Expenses, A/P Batch - 0398488, ENVISTA FORENSICS, LLC; AREPA, Invoice # 80204709 Invoice Date 01/14/2025, ENVISTA FORENSICS, LLC; AREPA - Engineer - 12/30/2024 10/17/2025 - Christ Logan - Professional Services." [ECF No. 54-3 at 1].

- January 10, 2025 ($750) – "Mediation Service, A/P Batch - 0385136, SALMON & DULBERG DISPUTE RESOLUTION INC, Invoice # 2025.0101D, Invoice Date 01/10/2025, Mediation with John Salmon of Salmon & Dulberg." *Id.*

- February 19, 2025 ($1,365) – "Expert Fees & Expenses, A/P Batch - 0387993, ENVISTA FORENSICS, LLC, Invoice # 80207500, Invoice Date 03/13/2025, ENVISTA FORENSICS, LLC - Engineer - 02/19/2025 03/13/2025 - Christopher Logan – Litigation." *Id.* at 2.

The barebones entries above leave key questions unanswered, such as the nature of the work performed, the expert's qualifications, or the expert's hourly rate and time billed. This won't do. *See Lopez v. Fairwinds SB LLC*, No. 24-CV-24255, 2025 WL 582746, at *6 (S.D. Fla. Feb. 21, 2025) (reducing expert fees from $1,250 to $750, where fee request rested on a "barebones invoice"). Nor does the Motion clarify matters, where its cursory description of the expert's work seems at odds with

what little may be gleaned from the Cost Record. The Motion claims the five-figure expert fees are "related to the expert witness report and investigation by [Defendant's] testifying rebuttal expert witness, Stephen Sheffield." [ECF No. 54 at 10]. But there is no "Stephen Sheffield" in the invoice.

The Time Report references Mr. Sheffield, but that document, which focuses on the legal team's efforts, references the expert's contributions in general terms only. And because he is not a timekeeper, the Time Report does not include his hours, the specific work performed, or the dates on which that work was carried out. *See, e.g.*, [ECF No. 54-2 at 6 (referring to discussion with Mr. Sheffield about "his findings")].

The docket provides limited information about Mr. Sheffield's case-related work. But, like the Cost Record and Time Report, it is silent on the expert's qualifications, hourly rate, or time billed. The record contains a three-page (7 paragraph) declaration from Mr. Sheffield, which incorporates his inspection report. [ECF Nos. 24-5 & 26-6]. The inspection report is five pages long and includes numerous photographs. *Id.* Complicating the fee-analysis, however, two people signed the report. Mr. Sheffield signed as "Senior Project Engineer" and a second individual signed as "Regional Technical Leader." [ECF No. 24-5 at 10]. Accordingly, the claimed total *appears* to reflect—though we cannot know for certain—the work of two individuals, and the record discloses nothing about their professional credentials, billing rates, hours spent on the case, or the scope of their individual contributions. Defendant also failed to supply evidence to show that the expert charges here fit the market rates for similar work. Those unanswered questions preclude meaningful review of the requested fees. *See Kennedy v. Fountains of Boynton Associates, Ltd.*, No. 16-CV-81902, 2017 WL 5957662, at *5 (S.D. Fla. Nov. 6, 2017) (recommending denial of $1,500 in expert fees and $1,000 in reinspection fees due to claimant's failure to outline "time spent on any task, the experts' rates, the nature of the work, [or] the date the work was completed"), *report and recommendation adopted*, No. 16-CV-81902, 2017 WL 5956871 (S.D. Fla. Nov. 29, 2017); *Barberi v. Mi Viejo San Juan Rest., LLC, et al.*, No. 16-CV-23313,

Dkt. No. 23 at 7 (S.D. Fla. Jan. 30, 2017) (reducing expert fee award because expert's report did not include a breakdown of the time spent inspecting the property, details of work performed, or description of other experts' fees for similar work).

As to the mediation fees, the proffered evidence is likewise lacking. The Motion requests "$750.00 in connection with the Parties' unsuccessful mediation on January 7, 2025," and references the invoice entry cited above. [ECF No. 54 at 10]. This entry does not explain the mediator's hourly rate, credentials, or time expended during the mediation. The Motion also fails to mention whether Plaintiff shared any of the mediator costs, which would also bear on the reasonableness of the fees. As with the expert fees, the Cost Report reflects only the total amount charged for mediation fees by a separate, unattached invoice from the mediator, [ECF No. 54-3 at 1].

The significant gaps in Defendant's evidence leave the Court two options. "Where a party fails to sufficiently support the requested expert fees, courts have either denied expert fees altogether or reduced the fees by a percentage." *Cohan v. Baby Marathon*, LLC, No. 20-CV-60185, 2020 WL 6731041, at *5 (S.D. Fla. Oct. 27, 2020), *report and recommendation adopted*, No. 20-CV-60185, 2020 WL 6729393 (S.D. Fla. Nov. 16, 2020); *see also Kennedy*, 2017 WL 5957662, at *5. Given the absence of documentation, the better course here is to deny these fees.

*  *  *

The Court respectfully recommends that the Motion be **GRANTED in part and DENIED in part**.

Within 14 days of being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on

unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2026); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND RECOMMENDED** in the Southern District of Florida on September 29, 2026.

______________________________
**YENEY HERNANDEZ**
**UNITED STATES MAGISTRATE JUDGE**

cc: counsel of record